# UNITED STATES DISTRICT COURT
for the
**Eastern District of Kentucky**
**Frankfort Division**

| | | |
|---|---|---|
| Shannon Hoskins<br>*Plaintiff*<br><br>v.<br><br>Equifax Information Services, LLC<br>*Defendant*<br>Serve:<br>    Corporation Service Company<br>    421 West Main Street<br>    Frankfort, KY 40601<br><br>Trans Union, LLC<br>*Defendant*<br>Serve:<br>    The Prentice Hall Corp. System<br>    421 West Main Street<br>    Frankfort, KY 40601 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

## COMPLAINT and DEMAND FOR JURY TRIAL

1.    This is a complaint for damages for Defendants Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union")'s violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

### JURISDICTION AND VENUE

2.    Jurisdiction of this court arises under 15 U.S.C. § 1681p. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Trimble County, Ky., which is located within this District.

### PARTIES

3.    Plaintiff Shannon Hoskins is a natural person who resides in Trimble County, Ky. and a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c).

4.      Defendant Equifax Information Services, LLC is a foreign limited liability company, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309, registered to do business with Kentucky Secretary of State and a "consumer reporting agency" within the meaning of the FCRA.

5.      Defendant Trans Union, LLC is a foreign limited liability company, with its principal place of business located at 555 West Adams, Chicago, IL 60661, registered to do business with Kentucky Secretary of State and a "consumer reporting agency" within the meaning of the FCRA.

## ALLEGATIONS

6.      On December 26, 2013, Midland Funding, LLC ("Midland") filed a lawsuit against Ms. Hoskins in the Trimble District Court of Trimble County, Kentucky under case number 13-C-00128 in an attempt to collect a debt from her.

7.      On April 8, 2014, Midland obtained a default judgment against Ms. Hoskins in the Trimble District Court lawsuit (the "Midland Judgment").

8.      On May 9, 2014, Midland recorded a "Notice of Judgment Lien" pursuant to the Midland Judgment with the Trimble County Clerk of Trimble County, Kentucky (the "Midland Lien").

9.      Between April 8, 2014 and May 2015, Ms. Hoskins paid the Midland Judgment in full.

10.     On May 20, 2015, the Trimble District Court entered an Order of Satisfaction, which declared the Midland Judgment "satisfied in full" (the "Midland Satisfaction"). A true and accurate copy of the Midland Satisfaction is attached hereto as Exhibit "A."

11.     On May 22, 2015, Midland recorded a Release of Judgment Lien with the Trimble County Clerk of Trimble County, Kentucky, releasing the Midland Lien (the "Midland Release"). A true and accurate copy of the Midland Release is attached hereto as Exhibit "B."

12. After paying off the Midland Judgment, Ms. Hoskins began efforts to improve her credit and credit score.

13. On November 11, 2015, Ms. Hoskins obtained copies of her consumer credit reports from Defendants Equifax and Trans Union.

14. Equifax and Trans Union both incorrectly reported on Ms. Hoskins' November 11, 2015 consumer credit reports that the Midland Judgment, which had been satisfied, and for which a Notice of Satisfaction had been filed of court record, and for which judgment lien had been released and filed of public record, remained unpaid and unsatisfied with a positive balance due and owing.

15. The only public record item on the Equifax and Trans Union November 11, 2015 credit reports obtained by Ms. Hoskins was the incorrectly reported Midland Judgment.

16. On December 3, 2015, Ms. Hoskins obtained a subsequent copy of her consumer credit report from Trans Union.

17. The December 3, 2015 Trans Union credit report continued to report incorrectly that the Midland Judgment remained unpaid and unsatisfied with a positive balance due and owing and which Midland Judgment was the only public record item on Ms. Hoskins' December 3, 2015 Trans Union credit report.

18. On or about February 2016, Ms. Hoskins received an invitation from MainSource Bank to apply to refinance her car loan at a substantially lower rate.

19. Ms. Hoskins thereafter did apply with MainSource to refinance her car at a substantially lower rate but was denied the loan.

20. In correspondence dated March 8, 2016, MainSource Bank stated that among the reasons for denying her loan application to refinance her car at a substantially lower rate was the public record of a judgment on her credit report.

21.     Ms. Hoskins owns a family farm, which farm is a separate parcel of land from Ms. Hoskins' home.

22.     Due to serious health issues which befell her husband and which created great financial hardship, Ms. Hoskins fell behind in her payments on the family farm.

23.     In October of 2016, in order to save her farm, Ms. Hoskins applied for a loan with MainSource Bank on her residence. At the time she applied for the loan, Ms. Hoskins owed approximately $6,000.00 on her home loan and well over $100,000 in equity in her home.

24.     Thereafter MainSource Bank denied her loan application and in so doing MainSource Bank sent her an adverse-action letter dated October 12, 2016. The adverse-action letter noted that MainSource had relied on credit reports from all three major Credit Reporting Agencies ("CRA's"), being Experian Information Solutions, Inc. and Defendants Trans Union and Equifax, in reaching its decision.

25.     The adverse action letter gave credit scores reported by the CRA's, and the credit score reported by Experian was substantially higher than those reported by Defendants Trans Union and Equifax.

26.     Ms. Hoskins' Experian credit report did not, and does not, contain any adverse public-record information.

27.     The adverse action letter sent to Ms. Hoskins by MainSource Bank noted that key factors in denying Ms. Hoskins' loan application and upon which it relied was the derogatory public record published by both Trans Union and Equifax on their credit reports for Ms. Hoskins which included the derogatory Midland Judgment.

28.     During October 2016, Equifax was still reporting on its credit report for Ms. Hoskins that the Midland Judgment remained unpaid and unsatisfied with a positive balance due and owing.

29. Upon information and belief, during October of 2016 Trans Union was still reporting on its credit report for Ms. Hoskins that the Midland Judgment remained unpaid and unsatisfied with a positive balance due and owing.

30. On January 25, 2017, Ms. Hoskins obtained a copy of her consumer credit report from Equifax.

31. Equifax reported on Ms. Hoskins' January 25, 2017 consumer credit report that the Midland Judgment remained unpaid and unsatisfied with a positive balance due and owing.

32. The Midland Satisfaction filed of record and the Midland Release recorded in the public records of Trimble County are freely and readily available to Equifax and Trans Union, and at all relevant times to this complaint were available to Equifax and Trans Union.

33. Even though the Midland Judgment had been satisfied and released, Equifax and Trans Union negligently or willfully failed to update the information it reported, and continues to report, on Ms. Hoskins' consumer credit report, to accurately reflect that the Midland Judgment had been satisfied and the Midland Judgment Lien had been released.

34. As a result of Equifax and Trans Union's negligent or willful failure to update Ms. Hoskins' consumer credit report and instead report inaccurate credit information concerning Ms. Hoskins and the satisfied Midland Judgment, Equifax and Trans Union incorrectly reported to numerous creditors and potential lenders that the Midland Judgment remained unpaid and unsatisfied and had a positive balance due.

35. As a result of the inaccurate credit information reported by Equifax and Trans Union due to its negligent or willful failure to maintain reasonable procedures to assure maximum possible accuracy, Ms. Hoskins was denied credit and financing, or received credit on less favorable terms, because of inaccurate credit information published by Equifax and Trans Union in connection with the Midland Judgment. In particular, Equifax and Trans Union falsely and incorrectly published to one or more of its subscribers and users of its consumer reports that the Midland Judgment was unpaid and unsatisfied and that a positive balance was still owed on the Midland Judgment.

36.     Equifax and Trans Union's reporting of the Midland Judgment was unpaid and unsatisfied was inaccurate in violation of the FCRA, 15 U.S.C. § 1681e(b). Equifax and Trans Union failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Hoskins' credit reports and credit files it publishes and maintains concerning Ms. Hoskins. If Equifax and Trans Union had reasonable procedures in place, Equifax and Trans Union would have discovered that Midland had filed the Midland Satisfaction and recorded the Midland Release *before* publishing Ms. Hoskins' credit report to its subscribers and users of its consumer reports in connection with Ms. Hoskins' loan and credit applications.

37.     Equifax and Trans Union failed to maintain reasonable procedures designed to avoid violations of the FCRA in connection with publishing credit information concerning Ms. Hoskins and the Midland Judgment.

38.     Upon information and belief, Equifax and Trans Union have a routine, systematic procedure to carefully gather and report derogatory judgments and judgment liens entered against consumers in the consumer reports that they furnish to users of their consumer reports, but do not have such routine, systematic procedures to gather and report information from the same courts for judgments and judgment liens when they become paid and released and to assure maximum possible accuracy.

39.     Equifax and Trans Union's negligent or willful failure to maintain the necessary procedures to assure maximum possible accuracy and use the same care in updating the derogatory information for Ms. Hoskins' Midland Judgment when the Midland Judgment had been satisfied to assure maximum possible accuracy, Equifax and Trans Union reported materially false and inaccurate negative credit information concerning Ms. Hoskins' paid and satisfied Midland Judgment.

# CLAIMS

**I.     Claims against Equifax Information Services, LLC**

40.     Plaintiff Shannon Hoskins restates each of the allegations in numerical paragraphs 1-39 above as if fully set forth herein.

41.     Equifax Information Services, LLC ("Equifax") violated 15 U.S.C. § 1681e(b) by negligently or willfully failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Hoskins and the Midland Judgment.

42.     Equifax's conduct, actions and inactions were negligent or willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Equifax was on clear notice that the failure to update public records with respect to judgments was problematic for Equifax. Other lawsuits raising the same issue has been filed against Equifax in this and other jurisdictions for the same failure.

43.     In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

**II.    Claims against Trans Union, LLC**

44.     Plaintiff Shannon Hoskins restates each of the allegations in numerical paragraphs 1-39 above as if fully set forth herein.

45.     Trans Union, LLC ("Trans Union") violated 15 U.S.C. § 1681e(b) by negligently or willfully failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Hoskins and the Midland Judgment.

46.     Trans Union's conduct, actions and inactions were negligent or willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along

with attorney's fees and costs. Trans Union was on clear notice that the failure to update public records with respect to judgments was problematic for Trans Union. Other lawsuits raising the same issue has been filed against Trans Union in this and other jurisdictions for the same failure.

47.     In the alternative, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Shannon Hoskins requests that the Court grant her the following relief:

1.     Award the maximum amount of statutory damages against each Defendant under 15 U.S.C. §1681n;

2.     Award Plaintiff Attorney's fees, litigation expenses and costs;

3.     Award Plaintiff actual damages against each Defendant under 15 U.S.C. §1681n or, in the alternative, under 15 U.S.C. § 1681o;

4     Award Plaintiff punitive damages against each Defendant under 15 U.S.C. § 1681n;

5.     A trial by jury; and

6.     Any other relief to which Plaintiff may be entitled.

Submitted by:

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel:    (502) 473-6525
james@kyconsumerlaw.com

James R. McKenzie
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel:    (502) 371-2179
jmckenzie@jmckenzielaw.com